Judge Mills
delivered the Opinion of the Court.
This is a bill in Chancery, relying on an adverse entry of land, for relief against an elder grant.
The entry set up by the complainant is as follows:
“July 26, 1784.
“John Holder and John Taylor, each to hold in proportion to the assignments on their warrants, enter 49665 1-2 acres of land on 12 Treasury warrants No. &c. joining an entry of Richard Graham’s on the Kentucky river, the said entry John Holder made for Graham, begining at bis upper corner, where be corners on the Kentucky river, then to extend up the river 3000 poles when reduced to a straight Hue, thence to make a right angle From that end of the line northwardly, thence to extend a line from the beginning, to run with Graham’s upper line so as to extend the right angles and the line from the beginning so far as shall include the quantity called for”
It will be perceived at once, on reading this entry, that the Kentucky river, with all its meandering, for the distance of 3000 poles, on a direct line, is to be its base and that one of the side lines is to run with Graham, and the other at right angles from the reduced line, so far that a line parrallel to the base, will include the quantity, and that the squaring principle is intended, except so far as the meanders of the river on one side, and the direction of Graham’s line on the other shall vary it, and the remaining question is an enquiry into the true position of Graham’s upper line and corner; to resolve which, Graham’s entry must be taken as a part of this. That entry is as follows:
“September 10, 1783.
“Richard Graham enters 33,615 acres of land, on 7 Treasury warrants, No. ic. beginning above the mouth of Howard’s upper creek, at Howard’s upper corner, where he corners on the Kentucky, thence up the Kentucky 2325 poles, when reduced *98 to a straight line, thence at right angles northwardly for quantity.”
Howard’s entry called for in Graham’s.
Construction and figure given to Howard’s entry.
Tho subsequent entry may, -for it purposes, cure an uncertainty in the entry its calls to adjoin by an addition to the description of an object. See 1 Mon'roe, 140.
This entry likewise gives a certain and determinate figure which cannot be mistaken; but brings up the enquiry, where is Howard’s upper corner above the mouth of Howard’s upper creek.
Howard’s entry on file reads thus:
“March 12, 1783.
•John Howard, assignee, &c. enters 1000 acres of ’land on part of a Treasury warrant No. &c. at the mouth of Howard's creek, on the north side of Kentucky, beginning at the mouth of said creek and to extend up the creek for quantity.”
This last entry needs construction to give it a figure, but the rules which must determine that figure, are fixed by previous decisions. It was the intention of the locator to include the mouth of the creek, and the creek itself, in a figure as nearly square as the objects will-admit. The Kentucky must be its base, extending equally as far above and below, as will make, when reduced to a straight line, the square, root of lOOO.acrcs, and lines must be extended from each end of this base up the creek and parallel to its general course, so far. as will include the quantity.
This fixes the upper corner of Howard upon the river, and only leaves the enquiry, where is Howard’s creek, or Howard’s upper creek? The proof is olearas to the notoriety of the stream set up by the complainant. At the date of these entries, it had acquired the name of Howard's creek, and as such, was a good locative call. There remains only the variance between the calls of “Howard’s creek,” in Howard’s entry, and “Howard’s upper creek,” in. Graham’s entry, to be reconciled. The latter supposes there is two creeks called by Howards name, and the former but one. The proof is not clear that there were two creeks by that name; nor do we deem it material whether there be two or but one. If there is one, Howards entry gives it the right name, and his upper corner will correct the mistake in Graham’s entry, supposing there were two. If there be two creeks, it might produce an uncertainty in Howard’s entry, but Graham has corrected *99 that uncertainty, by shewing that it was the upper creek at which Howard lay. or at which he intended Howard’s entry to He; and Howard’s entry laid down at the mouth of the upper creek, will fix with certainty the spot, where he intended Howard’s upper corner should be, at which lie was to begin. This construction is the same given to these entries by the court below, and we conceive that court did not err in declaring the entry set up by the complainant to be good and valid. Thus, far we have delivered our opinions relative to the validity of this entry, as well because the same questions may again occur in the inferior court, as on account of the joint request of the parties that the merits of the entries asserted should be considered by this court, notwithstanding there might be other points touching the regularity of the proceedings at previous stages of the cause.
To malte out: title under a sheriff’s conveyance, under a sale by execution aSfasnst the heirs of one of the- patentees Jhe death of patentee, and that defendants in the execution are his heirs, must be avored and proved, and the judgment produced.
The errors assigned question the derivation of title to the complainants; and that now claims our attention. The patent on the entry of Holder and Taylor, issued in the names of John Holder, Robert Trimble, James Clarke and James Simpson; the three last being assignee's of Taylor’s interest, and by sundry conveyances from these three, it does appear that the title has regularly passed to the complainant, for the land in dispute.
But not so as to the interest of Holder, ft is true that Samuel R. Combs, and Richard Holder have, joined in a conveyance to the complainant, and a conveyance is produced from the Sheriff of «still county, where the land lies, to said Combs and said Holder, which recites a sale of the said land to said Combs and it. Holder, by virtue of an execution issued against sundry persons therein named, and styled the heirs of said John Holder, the patentee. But this is evidently insufficient to shew a title to John Holder’s interest; first — -because there is no allegation or proof that Holder, the patentee, is dead, and that those persons against whom the execution emanated were his heirs; — and secondly there is no execution, judgment, or decree filed, which are necessary to shew authourity in the sheriff to make the sale and conveyance to said Combs and li. Hoi* *100 tier. Of course the complainant has failed to shew title to the undivided interest of the Patentee, Holder.
Decree reversed, for want of proof of title on part of the complainants with costs, and directions for the proper parties to bo made, or cause to be shown why it cannot be done.
Hanson for plaintiffs.
According to previous decisions, this defect of complete tille in the complainant, will not be fatal to his bill at once; but imposes upon him the necessity of making those who hold jointly with him parties to the controversy, or to shew reason why they cannot be brought in, or to have his bill dismissed without prejudice to any future suit for the same cause.
The decree must, therefore, be reversed with costs, and the cause be remanded for new proceed*. tugs not inconsistent with this opinion.